UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BM, a minor, by and through her parent
and next friend, JANE DOE
      Plaintiff,                           Case No.: 3:26-cv-435

ANTHEM BLUE CROSS/BLUE SHIELD,
      Defendant.                   MARCH 23, 2026

## **COMPLAINT**

Plaintiff JANE DOE ("Jane Doe") brings this suit on the behalf of BM, a minor as her parent and next friend ("Plaintiff" or BM) against Defendant ANTHEM BLUE CROSS/BLUE SHIELD ("Defendant"), and states as follows:

1. Jane Doe is an individual who, at all times relevant to this Complaint, resides in the County of Fairfield, and State of Connecticut, and is the parent of BM.

2. BM is a minor residing with Jane Doe, and is a beneficiary of the KYNDRYL MEDICAL PLAN (the "Plan") by virtue of her status as a child of Jane Doe's husband.

3. Defendant Anthem Blue Cross/Blue Shield is an insurance company doing business in the State of Connecticut, and is the claims administrator with responsibility for making all benefit determinations for the Plan.

4. The Plan is an employee welfare benefit plan as defined in Section 102(1) of the Employee Retirement and Income Security Act, 29 U.S.C. §1001 et seq. ("ERISA") with its principal place of business in the City of New York, State of New York.

5. Plaintiff brings this action under the Employee Retirement Income Security Act ("ERISA") 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B), to recover benefits under the Plan

and other authorized relief. This Court has subject matter jurisdiction over this action, and it may assert personal jurisdiction over Defendant pursuant to ERISA 502(e)(2), 29 U.S.C. 1132(e)(2). Venue is proper in this district as Defendant does business in the State, and Plaintiff resides in the State of Connecticut.

## Claim for Relief

6. This suit appeals the denial by Defendant of Plaintiff's pre-service authorization request for durable medical equipment, a FlexStep system, that is necessary for BM to avoid significant physical and psychological injury.

7. BM's injuries resulted from premature birth as a result of an emergency cesarean delivery necessitated by her mother's near death.

8. After being revived several times after her delivery, BM survived, but suffered oxygen deprivation resulting in cerebral palsy, significant neuromotor impairment and corresponding catastrophic functional disabilities.

9. BM is now twelve years old, beginning the transition to adulthood with the complications of being unable to independently ambulate, having great difficulty verbally communicating, and with no capacity to independently ascend or descend stairs to enter or exit the house, or to move among the floors of her home.

10. BM's physicians have determined that BM has complex psychological and developmental needs associated with cerebral palsy (ICD-10: G80.9), severe expressive communication disorder (ICD-10:F80.2F80.2), generalized anxiety disorder (ICD-1 0: F41.1), and a history of suicidal ideation (ICD-10: R45.851) and threats of harm to others (ICD-10: R45.6).

11. Regarding the consequences of these physical and psychological conditions,

2

BM's physicians have opined as follows:

a.      BM's cerebral palsy results in profound limitations in mobility and expressive communication, requiring the use of a motorized wheelchair for all functional movement, that have contributed to social isolation, frustration, and a sense of dependency, which directly impact her emotional and psychological well-being.

b.      BM has repeatedly expressed distress regarding her inability to move independently, and this lack of autonomy is a precipitating factor in her anxiety, emotional dysregulation, and behavioral challenges.

c.      Adolescence is a critical period for identity formation, self-esteem, and independence, and that physical access to her home is inseparable from BM's mental health and developmental needs, as the inability to move freely and independently within her own home profoundly affects her sense of autonomy, self-worth, and emotional stability.

d.      Clinical research and their direct experience show that adolescents with disabilities is at significantly increased risk for depression, anxiety, and suicidal thoughts when independence is restricted.

12.      Flex-Step is durable medical equipment as defined by the Plan that converts from stairs to a lift that Plaintiff can use on her own without assistance to move among the different levels of her residence (the "Requested DME").  Due to her physical limitations, Plaintiff cannot enter or exit her existing stair chair lift without substantial lifting by her personal aide or her family, putting her and whoever is helping her at risk of injury, which danger will only increase as Plaintiff grows into adulthood.

3

13. BM's physicians have further opined that the Requested DME:

a. Will prevent and treat symptoms associated with her medical and psychiatric conditions, in accordance with generally accepted standards of medical practice and prudent clinical judgment;

b. Environmental modifications such as the Requested DME are recognized as essential for patients with severe mobility impairments to maintain health, safety, and psychological stability;

c. Restricting BM's independence during this pivotal period may lead to regression in her mental health, with potentially life-threatening consequences given her history of suicidal ideation, and

d. The denial of coverage for this equipment would not only restrict BM's mobility, but could also undermine her emotional and psychological stability, with potentially life threatening consequences.

14. In November, 2025, Plaintiff's physician submitted a pre-authorization request (the "Request") for the Requested DME for use in her residence..

15. In Explanations of Benefits dated November 11 and 18, 2025, Anthem denied the Request on grounds that the "[is] not Medically Necessary for the treatment of an Injury or illness," and stating the Requested DME was in the nature of "[h]ousehold supplies [and] deluxe equipment."  (the "Denials")

16. Plaintiff timely appealed the Denials on December 8, 2025 (the "Initial Appeal").

17. In a letter dated December 22, 2025 and received by Plaintiff on approximately December 27, 2025, Anthem denied the appeal on materially the same

4

grounds as the initial denial (the "Initial Appeal Decision").  Anthem did not address the medical necessity for the Requested DME for Plaintiff's health development.

18.     On February 16, 2026, Plaintiff, through counsel, filed a timely appeal of the Initial Appeal Decision (the "Second Appeal"), and requested an extension of sixty days from the original appeal deadline of sixty days from receipt of first appeal denial to submit documents and argument in support of the appeal.  Plaintiff's counsel further requested a copy of the claim file pursuant to 29 C.F.R. §2560.503-1 subsections (h)(2)(iii) and (m)(8).

19.     The appeal was delivered to Anthem post office box (United States Mail being the only method Anthem permits for submitting appeals) on Thursday February 19, 2026.

20.     On February 20, 2026, the undersigned called Anthem and the representative acknowledged receipt of the appeal and the request for an extension of time to submit materials in support of the appeal.  Anthem's representative told the undersigned that "we is all set."

21.     In a letter dated February 23, 2026, Anthem sent an acknowledgement of receipt of the appeal.

22.     On March 13, 2026, Plaintiff received a denial of the Second Appeal in a letter dated March 6, 2026, despite more than six weeks remaining in the extension requested by Plaintiff after the date of the denial letter.

23.     By deciding the Second Appeal before Plaintiff could submit argument and documents in support of the Second Appeal, and without informing Plaintiff had it would not agree to the extension, Anthem violated its obligations pursuant to 29 C.F.R.

§2560.503-1(b) and (c) to maintain reasonable appeal procedures, including without limitation its obligation pursuant to 29 C.F.R. §2560.503-1(c)(3).

24.  As of the date of the filing of this complaint, Anthem has filed to comply with its obligations pursuant to 29 C.F.R. §2560.503-1 subsections (h)(2)(iii) and (m)(8) to produce a copy of the claim file.

25.  Pursuant to 29 C.F.R. §2560.503-1(l), Plaintiff is deemed to have exhausted the administrative remedies available under the Plan due to Anthem's failure to follow reasonable claims procedures.

26.  Due to Anthem's failure to comply with 29 C.F.R. §2560.503-1, the denial should be reviewed under a *de novo* standard of review.

27.  Based on the materials submitted in connection with this claim, Plaintiff is entitled to approval of the Requested DME pursuant to the Plan.

28.  The Plan breached the terms of the Plan by failing to approve the Requested DME under the Plan and by failing to maintain and follow reasonable claims procedures in violation of 29 CFR §2560.503-1.

29.  As a result of the foregoing, Plaintiff has and will suffer a loss in the form of unpaid benefits under the Plan, and from the serious physical and psychological damage she will suffer from the denial of the Requested DME.

30.  Plaintiffs is also entitled to prejudgment interest and an award of attorney's fees under ERISA 502(g) in an amount to be proven.

WHEREFORE, Plaintiff requests the Court to grant her the following relief from Defendant Anthem Blue Cross/Blue Shield:

a. A judgment in the amount of all benefits due under the Plan plus prejudgment interest, or an order that the Requested DME be covered under the Plan;

b. A judgment ordering Defendant to pay Plaintiffs' costs and attorneys' fees, under ERISA 502(g); and

c. All other legal or equitable relief to which it is entitled.

Dated: March 23, 2026                                    PLAINTIFF:

                                                         JANE DOE, as parent and next
                                                         friend of BM, a minor


                                                          /s/ David S. Rintoul ct#08456
                                                         David S. Rintoul
                                                         Rintoul Law, LLC
                                                         148 Danbury Road
                                                         Wilton CT 06897
                                                         Telephone: (203)349-8500
                                                         Fax: (203) 628-4791
                                                         dsr@rintoullaw.com